UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>RICHARD LEE.,<br><br>                    Defendant. | 13-CR-00539 (PGG) |

# DECLARATION OF GREGORY MORVILLO

Pursuant to 28 U.S.C. §1746, Gregory Morvillo declares as follows:

1.      I am an attorney admitted to practice before this Court and a partner with the law firm Morvillo LLP.  I respectfully provide this Declaration in support of Richard Lee's Motion to Withdraw his Guilty Plea.  Unless otherwise stated, this Declaration is based upon my own personal knowledge and experience.

2.      In or about the summer of 2015, Richard Lee contacted me about his insider trading case after the Second Circuit's December 2014 decision in *United States v. Newman*, 773 F.3d 438 2d Cir. 2014), and its April 2015 denial of the Government's petition for rehearing, No. 13-1837 (2d Cir. Apr. 3, 2015).  At the time, Mr. Lee had other counsel, which had represented him in connection with his guilty plea in the above-captioned matter.

3.      Mr. Lee pled guilty to a criminal information that charged him with one count of conspiracy to commit securities fraud relating to two objects: April 2009 trading in Yahoo Incorporated, and November 2009 trading in the stock of 3Com Corporation.  The information also charged him with one substantive count of securities fraud relating to trading in Yahoo on July 10, 2009, after allegedly receiving material nonpublic information on a recorded telephone

call with Sandeep Aggarwal (the "Aggarwal Call"), a sell-side analyst from a firm called Collins Stewart.

4. After the Supreme Court denied the *Newman certiorari* petition in October 2015, I contacted the government on Mr. Lee's behalf to discuss his case.

5. In December of 2015, my colleague Savannah Stevenson and I met with the government to discuss Mr. Lee's case. We made a presentation to the government, which, in sum and substance, communicated our view that Mr. Lee's plea was infirm because he had not allocated to each element of the crime (namely, personal benefit and/or knowledge thereof), and that he had viable defenses relating to personal benefit and knowledge thereof. The government and we agreed to wait to address Mr. Lee's case until after the Supreme Court decided whether to accept the *certiorari* petition in *United States v. Salman*, No. 15-628 (July 16, 2015).

6. A little more than one month after our meeting with the government, the Supreme Court accepted review of *Salman*, No. 15-628 (Jan. 16, 2016). Because *Salman* had potential implications for Mr. Lee's case, the government and we again agreed to wait to make any determinations about Mr. Lee's case until the Supreme Court issued its decision in *Salman*. In deciding to wait, the government agreed not to argue undue delay should Mr. Lee later decide to move to withdraw his plea.

7. Around the same time, we began to request certain documents from the government that would allow us to calculate alleged trade profits in Mr. Lee's case. Shortly thereafter, the government assigned Mr. Lee's case to another prosecutor. The government then asked Mr. Lee to consent to adjourn his sentencing until after the *Salman* decision. Attached as Exhibit A is a true and correct copy of the March 28, 2016 email from Ms. Stevenson to the government evidencing the government's request to adjourn sentencing.

8.    The Supreme Court issued its *Salman* decision in December 2016, No. 15-628 (Dec. 6, 2016). Early in 2017, Ms. Stevenson continued to request certain documents from the government, specifically instant messages or electronic "chats" that would assist counsel in determining the alleged gain from the Yahoo stock purchases.

9.    In February 2017, the government informed us that yet another new, different prosecutor had been assigned to handle Mr. Lee's case. Upon information and belief, Ms. Stevenson spoke with the new AUSA and reiterated our request for the above-described documents.

10.   In the ensuing several months, upon information and belief, the government expressed having difficulty locating information responsive to our request because the file relating to SAC capital is extremely large.

11.   On May 26, 2017, the government provided Ms. Stevenson with an instant message from Mr. Lee to Steven Cohen from July 10, 2009 (the "Cohen IM") in response to our request. Attached as Exhibit B is a true and correct copy of the Cohen IM.

12.   The Cohen IM demonstrates that on July 10, 2009—the same day as the Yahoo trade that is the subject of the securities fraud charge in Count II of the criminal information—Mr. Lee communicated to Mr. Cohen at 9:13am the news that Collins Stewart (the sell-side firm where Mr. Aggarwal worked) was informing its clients that a Yahoo/Microsoft partnership deal could be announced within two weeks. I know from reviewing materials in this case that Mr. Lee's call with Mr. Aggarwal—during which he is alleged to have received the same information—did not occur until approximately 11:30am that same day.

13.   The Cohen IM caused me to believe that, in addition to personal-benefit-related defenses, the facts supporting Mr. Lee's plea bore further scrutiny.

14. Upon information and belief, Ms. Stevenson informed the government that the Cohen IM was helpful to have, but that this was not the type of instant message that we had previously requested and were seeking chats and other electronic messages between Mr. Lee and his trader that would demonstrate when Mr. Lee placed orders for his trader to purchase shares of Yahoo on July 10, 2009.

15. In June 2017, I reached out to an employee of the legacy firm of SAC Capital and asked them to provide us with the information we had requested from the government.

16. Later that month, that individual orally provided me with information that caused me to understand that Mr. Lee had ordered the purchase of 700,000 out of the 725,000 Yahoo shares he bought that day prior to 11:30am—the time of Mr. Lee's call with Mr. Aggarwal.

17. Ms. Stevenson and I contacted the government to schedule a meeting to determine how to move forward in Mr. Lee's case based on the discovery of information that shows that, before he ever spoke with Mr. Aggarwal, Mr. Lee already knew the allegedly improper information and had already ordered the purchase of 700,000 shares of Yahoo securities.

18. Just before the meeting, the government located the previously requested electronic chats. The July 10, 2009 chat between Mr. Lee and his trader (the "RLDB Chat") confirmed that Mr. Lee purchased 700,000 of 725,000 shares in his SAC portfolio prior to speaking with Mr. Aggarwal. A true and correct copy of the RLDB Chat is attached as Exhibit C.

19. On July 31, 2017, Ms. Stevenson and I met with the government to discuss this newly discovered information.

20. In the first few weeks of August, Ms. Stevenson and I had a series of communications with the government about Mr. Lee's case. On August 25, 2017, the government informed me that it would not consent to Mr. Lee's withdrawal of his plea.

21. After speaking with the government on August 25, 2017, I immediately contacted the Court's chambers to explain the complex procedural posture of Mr. Lee's case and to ask how the Court wished us to proceed. On August 30, 2017, the Court set a briefing schedule for Mr. Lee's motion to withdraw his plea, with Mr. Lee's moving brief due Friday, September 15, 2017.

22. Mr. Lee has taken the position that, had he been aware of his potential legal defenses relating to the fact that he learned the critical deal-timing information prior to the Aggarwal Call and, in turn, purchased the vast majority of Yahoo shares prior to the Aggarwal Call on July 10, 2009, as well as those legal defenses related to personal benefit, he would not have pled guilty to the Count II substantive charge in this case. Mr. Lee has also taken the position that, had he known he was not guilty of Count II of the criminal information—the count alleging the trade based on the Aggarwal Call—he would not have pled guilty to the Count I conspiracy.

23. At all times since Mr. Lee first contacted me in mid-2015, Mr. Lee and I have diligently pursued his case, and the lengthy period of time that has passed has been due to the developing law and to the time it has taken to learn the facts that have ultimately caused Mr. Lee to move to withdraw his plea.

24. Attached to this Declaration are the following additional exhibits: Exhibit D is a copy of the Collins Stewart PLC Annual Report and Accounts dated 2010; Exhibit E is a compilation of Yahoo share price data from July 6, 2009 through July 31, 2009; Exhibit F is a copy of the transcript from Mr. Lee's July 23, 2013 plea hearing; Exhibit G is a copy of Sandeep Aggarwal's July 10, 2009 Research Note regarding the Yahoo/Microsoft Deal Update.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 15, 2017
       New York, New York

                                              /s/Gregory Morvillo
                                              Gregory Morvillo